UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*******************************************************

JEREMY BEAULIEU and &ast;
REBECCA BEAULIEU &ast;
&ast;
**Plaintiffs** &ast;
&ast;
v. &ast;    C.A. NO. 3:21-cv-1099(KAO)
&ast;
KEEPER CORPORATION and &ast;
HAMPTON PRODUCTS INTERNATIONAL &ast;
CORPORATION &ast;
&ast;
**Defendants** &ast;

*******************************************************

## <u>COMPLAINT</u>
## <u>JURY TRIAL DEMANDED</u>

1.    The plaintiffs, Jeremy Beaulieu, and his wife, Rebecca Beaulieu, at all material times hereto resided at 50 Promenade Street, Hudson, Wisconsin 54016.

2.    The defendant, Keeper Corporation. (hereinafter "Keeper"), at all material times was and is a business corporation doing business in the state of Connecticut at 6 Industrial Park Road, North Windham, Connecticut, 06256, and, when it designed, marketed, advertised, and sold the product at issue in this case, a "Keeper" brand bungee cord, which blinded the plaintiff, Jeremy Beaulieu, then had a principal place of business in Connecticut; and further, at that time and still at present, Keeper Corp was, and remains, registered to do business in the state of Connecticut, listing in its filings with the state of Connecticut the above address in Connecticut where it designed, manufactured, distributed and/or sold bungee cords manufactured by it under the brand name "Keeper," both on its own and also as part of a joint enterprise, and/or as a joint tortfeasor with, or as a subsidiary of co-defendant Hampton Products International Corp, (hereinafter referred to a "Hampton Products") which, likewise, is and was, at all material times, including at present, registered to do business in the State of Connecticut, listing with the State of Connecticut as its address in Connecticut the very same address as Keeper Corp:  i.e., 6 Industrial Park Road, North Windham, Connecticut, 06256.

3.   The co-defendant, Hampton Products International Corp, (hereinafter "Hampton Products") at all times material to this case, then and now, likewise engaged in, and also under the legal doctrine of Respondeat Superior, was legally responsible for the conduct of Keeper Corp, which corporation it acquired as wholly owned by Hampton, both Keeper's and Hampton's own decisions and conduct regarding the design, distribution, marketing, advertising, sales, and failure to recall certain "Keeper" brand bungee cords, which both Keeper AND Hampton knew, or should have known, had become unreasonably unsafe, dangerous to use, and defective, including the bungee cord which the defendants sold to the plaintiff, which severely injured the plaintiff, Jeremy Beaulieu, blinding him in his right eye.

4.   Both defendants at all material times engaged in continuous and systematic business of designing, marketing, advertising, selling, and distributing for sale "Keeper" brand Bungee Cords throughout the United States for sale to consumers nationwide, including to customers and consumers in the state of Wisconsin, where the plaintiff, Jeremy Beaulieu, purchased and thereafter used this Keeper bungee cord to secure items he packed for a family trip he; his wife, Rebecca; and their two children were about to embark on, when this severe eye injury was caused to Jeremy at the rear of their family vehicle parked just outside their home in Wisconsin on August 18, 2018.

5.   As set forth in this Complaint, both defendants had sufficient contacts with and within the state of Connecticut to confer jurisdiction over the defendants herein by this Honorable Court in the state of Connecticut arising from the defendants doing business in Connecticut and/or registering to do business in Connecticut pursuant to Connecticut's Foreign Corporation Business Registration; and further, at all times material to this case, engaging in continuous and systematic business and sales of Keeper bungee cords through stores, and by the internet, to be sold to consumers nationwide, including to the plaintiff Jeremy Beaulieu in Wisconsin, and to enable the plaintiff Jeremy Beaulieu to easily and readily purchase the defendants' bungee cord in Wisconsin, thereby constituting sufficient and purposeful contacts by each, and both, of the defendants, with the State of Connecticut sufficient to confer jurisdiction over both of the defendants by this Honorable Court herein in the State of Connecticut.

6.   Jurisdiction is based on diversity of citizenship and the amount in controversy exceeds $75,000  (U.S.C. Sec. 1332).

7.   The defendants designed, manufactured, chose and selected to market, and
      distribute, and negligently failed to timely recall their unreasonably dangerous
      and defective Keeper bungee cord, which they chose to continue to sell to
      consumer, including the plaintiff, Jeremy Beaulieu, in Wisconsin, notwithstanding
      that these defendants both knew and had actual knowledge of the unreasonable
      danger presented by this particular model and style Keeper bungee cord, as
      proven by the fact that the defendants had already cured the defect and danger
      and were selling other different, bungee cords with safe hooks, yet failed to notify
      consumers, including the plaintiff, both prior to his purchase, as well as after his
      purchase, by a recall or product information notice to purchasers, including the
      plaintiff, of the facts which had become known to the defendants, including that the
      model and hooks on the Keeper bungee cord sold to the plaintiff were
      unreasonably dangerous and defective in design and in its manufacture when it
      left the defendants' possession; and as a result, blinded Jeremy Beaulieu in his
      right eye during his ordinary and foreseeable use of the defendants' product on
      August 18, 2018, when he was, on that date and occasion, using the subject
      Keeper cord as it was intended to be used and/or in a foreseeable manner, to tie
      down and secure objects in the back of their family vehicle while he was in the
      process of packing it for a family vacation trip he and his wife Rebecca and their
      two children were about to embark on.

8.   On August 18, 2018, the aforesaid defects and dangers inherent in the hooks of
      the bungee cord model the defendants had irresponsibly and negligently chosen
      to continue to manufacture and sell, rather than to timely discontinue their sale of
      that bungee cord model in favor of their much safer model bungee cords, which
      they were, prior to the plaintiff's injury, selling to the public a re-designed, safe
      bungee cord with hooks which would not deform or inadvertently open to cause
      snap-back eye injuries as occurred to the plaintiff; but the defendants failed to
      discontinue the sale of the type of hooks and bungee cord they sold to the
      plaintiff, and negligently continued the sales of the unsafe model, knowing of its
      dangerousness, and as a result, the bungee cord sold to the plaintiff, Jeremy
      Beaulieu, was caused to fly back and strike the plaintiff's eye, causing him to
      suffer severe and permanent traumatic eye injuries, resulting in permanent visual
      loss/blindness in his right eye; and as a result, caused the loss of the many
      enjoyments of life Jeremy had prior to being so injured and other physical,
      emotional, and mental anguish caused by the defendants' negligent failure to
      discontinue and/or recall this bungee cord in light of the knowledge of the danger
      of it, which the defendants both possessed and knew of, but negligently and
      knowingly and with a reckless disregard for the safety and well-being of
      consumers and their customers, sold to the plaintiff, Jeremy Beaulieu, the
      bungee cord which is the subject of this case.

9.   Both of the defendants were negligent in failing to warn consumers and their
      customers of the fact that they had been manufacturing newer, differently
      designed, safe bungee cords equipped with safe hooks which would have
      prevented this plaintiff's injuries; but defendants failed to ever timely and

effectively communicate to its consumers and customers, including the plaintiff, Jeremy Beaulieu, these facts so that he would have had this crucial safety knowledge the defendants had learned of, so that, at the time of his bungee cord purchase, he could have and would have, if he had been so informed, purchased from the defendants their safer model with safe hooks, rather than the outmoded and dangerous model the defendants failed to ever timely warn him about.

10.     The eye injuries and damages caused by the defendants' bungee cord have, unfortunately for Jeremy and his wife Rebecca and their children, proven to be severe, deforming, and permanent in nature; and as a result, Jeremy and his wife have suffered and will suffer further life-long damages including but not limited to depression, worry, fear, and terror over the very real and increased risk of Jeremy becoming totally blind in both eyes; impairment of many, if not all, of his previous enjoyments of life; physical, mental, and emotional worry, anxiety, and suffering resulting from the defendants' failed, defective, and unreasonably dangerous product.

11.     As a further result of the above, the plaintiff suffered a ruptured globe (eyeball), multiple surgeries (four) to repair the ruptured globe, to reattach his retina, replace his lens, and otherwise address the traumatic damage to his eye.  Additionally, the plaintiff's treating ophthalmologic surgeon needed to put sutures into Jeremy's pupil to manually shrink its size.  The eye surgeon has further informed the plaintiff that he will require additional surgeries to remove the oil the surgeon left in his eye to give the eyeball its shape, and further surgeries to insert new oil, until the eye is no longer viable, at which time he will require removal of the eyeball which will be replaced with a prosthetic in yet another surgery. The plaintiff is expected to incur additional bills and expenses for the rest of his life for all of this further care and surgical treatment, all to his great detriment and loss.

12.     As a further result of the above, the plaintiff has been left functionally blind in his right eye.  He will remain at risk of future loss or diminution in his earnings and earning capacity, notwithstanding his best efforts to date to work and to continue to help support his family.

13.     As a further result of the failure of the defendants' defective bungee cord, the plaintiff has suffered, and will in the future remain suffering, scarring and a readily visible disfigurement and deformity of his eye and his appearance, leaving him self-conscious and embarrassed over his misshapen eye.

4

## COUNTS

14.    Each Count set forth below specifically incorporates by reference therein all of the facts and allegations set forth hereinabove in Paragraphs 1 through 13, as against the defendant named in each Count.

15.    The plaintiffs' proof is expected to include those defects which are explained and set forth in the liability expert report of Lester Hendrickson and the exhibits referred to therein by Dr. Hendrickson, a PhD in forensic engineering, which have been previously furnished to the defendants.

### COUNT I:  JEREMY BEAULIEU V. KEEPER CORPORATION: RULE 402A STRICT LIABILITY FOR KEEPER'S UNREASONABLY DANGEROUS AND DEFECTIVE PRODUCT

16.    The plaintiff hereby restates and incorporates by reference herein as against KEEPER CORP. all of the facts and allegations set forth hereinabove in Paragraphs 1 through 15.

17.    The defendant corporation, KEEPER CORP, is responsible and legally liable by the law to compensate the plaintiff for all of the harm, pain, suffering, and all of the damages, past and future, as a result of its manufacture, distribution and sale of its unreasonably dangerous and defective product sold to the plaintiff, in accordance with the law imposed upon this manufacturer and seller known as "Strict Liability," i.e., liability without the need to prove negligence, as is set forth in Rule 402A, Strict Liability.

18.    In support of these Rule 402A strict liability/design defect and/or manufacturing defect claims, this plaintiff incorporates by reference herein the liability expert report of Lester Hendrickson, PhD and exhibits referred to therein, which were previously furnished to the defendants.

19.    Per the applicable product liability law, which remains governed by the Restatement (Second) of Torts, Section 402A, the plaintiff alleges and intends to show that the subject bungee cord which he purchased in Wisconsin, which caused him severe injuries during his ordinary use of the product, was (1) defective; (2) that the defects in this product  proximately caused the plaintiff's injuries, including his eye  injuries which resulted in blindness in his right eye; and (3) that said defects in this Keeper bungee cord existed at the time the product left this defendants' control.

20.    The plaintiff will establish such defective condition[s] in one or more of these ways:  [1] by proving a manufacturing defect; and/or [2] by proving a design defect.

## COUNT II. JEREMY BEAULIEU V. KEEPER CORPORATION:
## NEGLIGENCE

21.     All of the facts and allegations set forth above in Paragraphs 1-15 as well are hereby restated and incorporated herein again the defendant named in this Count.

22.     And the plaintiff states that this defendant was negligent and failed to use reasonable care in:

   A.     Failing to take reasonable steps to inform him by labeling or otherwise of the fact that it had already designed and was selling different model/style bungee hooks which gated hooks that would not open up as the "J" shaped hooks sold to the plaintiff did, causing the "snap-back" recoiling at high speed eye injury the defendant's model bungee did cause the plaintiff to suffer, resulting in blindness in his right eye;

   B.     Failing to make prominently known the information set forth in Paragraph A above both in all stores to which the defendant sold and distributed the product which injured the plaintiff and failing to direct all such stores and provide all such stores with product displays, and failing to prominently state in its catalogues and on-line advertisements of the bungee cord which injured the plaintiff, that a newer safer model existed which was designed to prevent eye injuries;

   C      Failing to timely stop selling the make and model bungee cord with the hook that injured the plaintiff and failure to replace all such hooks with the much safer hooks already available to this manufacturer and distributor; and

   D.     Failing to timely recall the product which injured the plaintiff; and failing to institute and timely recall or product recovery program, to prevent the plaintiff and others from being needlessly injured, by buying instead this company's safer bungee cords with the safer non-J-shaped hooks.

23.     Accordingly,

   -   Negligent failure to warn of the above;

   -   Negligent failure to warn that this manufacturer had found a cure to the danger and problem in the bungee cord industry AND was, in fact, already manufacturing and selling cords with hooks that were designed to prevent such hook-dislodging/snap-back eye injuries; and

6

- Negligent failure to timely **recall** the old-style unreasonably dangerous bungee cords with J-shaped hooks which were well known to bend open and snap back and cause serious eye injuries;

- Negligent failure to timely institute a product-recovery campaign to reach out to and educate the public and all bungee cord consumers and institute a product recovery campaign to **recover** the old-style unreasonably dangerous bungee cords with J-shaped hooks which were well known to stretch open, snap back, and cause serious eye injuries; and replace them, or offer to replace them with the safer model designed to prevent dislodging of the J-shaped hooks that could open up and snap back into eyes at high velocity.

- Negligent failure to promulgate and post product literature and displays of the safe bungee cords at all places where its old style dangerous hooks might still be being sold

## COUNT III:  JEREMY BEAULIEU V. KEEPER CORPORATION:
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

24.  The plaintiff hereby restates and incorporates by reference herein as against the above defendant named in the heading of this Count all of the facts and allegations set forth hereinabove in Paragraphs 1 through 15.

25.  The defendant corporation is liable to compensate the plaintiff for all of the past, present, and future damages suffered as set forth hereinabove as a result of this defendant's breach of implied warranty of fitness for a particular purpose. The applicable law imposes upon the defendant corporation an obligation to have impliedly warranted, with respect to its bungee cords and its hooks, that they be fit and reasonably safe for the particular purpose that it was sold to accomplish including its use to tie down and secure objects.

26.  Here, the defendant breached the implied warranty of fitness for a particular purpose because the subject cord's hook bent during the plaintiff's ordinary use of it, being unfit for one of the particular purposes it was manufactured and sold for, and unfit for, and the particular purpose the defendant knew and reasonably did and should have expected the subject product to be used for: i.e. use to safely tie down and secure items, e.g., in the back of vehicles, just as the plaintiff used the subject bungee cord for when its hook unforeseeably bent open to a degree, thereby impairing its original "J-shape" at one end, and thereby then causing the snap-back eye injury to the plaintiff who was in the process of the attaching the other hook at the other end of the bungee cord he was still holding in his hand.

That this occurred shows that this Keeper bungee cord was not fit for this particular purpose for which it was manufactured and sold and bought by the plaintiff, thereby causing the plaintiff to suffer the aforesaid blinding eye injuries and damages as the direct and proximate result of defendant's breach of this warranty of fitness for its particular purpose which is imposed by law upon the defendant manufacturer and seller.

27.    The plaintiff alleges that this defendant both knew, and should have known:

(1) of the particular purposes for which this bungee cord would foreseeably be used, and therefore, the safety considerations required; (here, to safely be able to be stretched and applied by its user to secure items in the back of vehicles);

and

(2) that the buyer was relying on the skill or judgment of this defendant to select or furnish safe suitable goods to effectuate these purposes. There is [imposed by the law]…an implied warranty that this bungee cord, and all such goods, shall be fit for such purposes; and that this defendant, as a manufacturer, or distributor, or seller, had an obligation to select or furnish to consumers and to purchasers of defendant's product, suitable goods; i.e., there is imposed by the law an implied warranty that the goods; i.e., this bungee cord and these hooks it distributed and sold to this consumer and purchaser, Jeremy Beaulieu, shall, by law, be fit for such purposes.

## COUNT IV. JEREMY BEAULIEU V. KEEPER CORPORATION: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

28.    The plaintiff hereby restates and incorporates by reference herein as against the above defendant named in the heading in this Count, all of the facts and allegations set forth hereinabove in Paragraphs 1 through 15.

29.    The defendant corporation is liable to compensate the plaintiff for all of the harm, pain, suffering and damages, past and future as a result of its breach of the implied warranty of merchantability.  The applicable law imposed upon the defendant an obligation to have impliedly warranted, with respect to its bungee cord, that it was merchantable, fit for its ordinary uses, and reasonably safe.  The defendant breached this implied warranty of merchantability because said product proved to be unsafe, not of merchantable quality, and unfit for its intended ordinary uses and purposes.  The plaintiff was caused to suffer the aforesaid injuries and damages as the direct and proximate result of defendant's breach of the implied warranty of merchantability imposed by the law.

## COUNT V. REBECCA BEAULIEU V. KEEPER CORPORATION:
## LOSS OF CONSORTIUM

30.   At all material times, Rebecca Beaulieu was married to Jeremy Beaulieu and has
suffered along with her husband and his pain, suffering, humiliation, changes in
his personality, impairment of his ability to enjoy life as he had before,
impairment of his ability to play with their two young boys as he had before,
changes in his mood and temperament caused by his fear of blindness, and
surgeries, and no longer being the same person he was before being so injured,
and in many, many other ways Rebecca has suffered, and will suffer, from the
loss of consortium, including loss of intimacy and marital relations as well of her
husband, Jeremy, resulting from the eye injury, blindness, change in his
appearance and personality as a result of this injury caused by the defendants
and their unreasonably dangerous and defective product and their failure to offer
to him their safe bungee cord which would have prevented this terrible injury and
losses to their relationship brought for which the defendant corporations are
responsible.

## COUNT VI: JEREMY BEAULIEU V. HAMPTON PRODUCTS:
## RULE 402A STRICT LIABILITY FOR HAMPTON PRODUCTS UNREASONABLY
## DANGEROUS AND DEFECTIVE PRODUCT

31.   The plaintiff hereby restates and incorporates by reference herein as against
Hampton Products International Corp all of the facts and allegations set forth
hereinabove in Paragraphs 1 through 15.

32.   The defendant corporation, Hampton Products International Corp, is responsible
and legally liable by the law to compensate the plaintiff for all of the harm, pain,
suffering, and all of the damages, past and future as a result of its manufacture,
distribution and sale of its unreasonably dangerous and defective product sold to
the plaintiff, in accordance with the law imposing upon this manufacturer and
seller what is known as "Strict Liability." i.e., liability without the need to prove
negligence, as is set forth in Rule 402A, Strict Liability.

33.   In support of these Rule 402A strict liability/design defect and/or manufacturing
defect claims, this plaintiff incorporates by reference herein the liability expert
report of Lester Hendrickson, PhD and exhibits referred to therein, which were
previously furnished to the defendants.

34.   Per the applicable product liability law, which remains governed by the
Restatement (Second) of Torts, Section 402A, the plaintiff alleges and intends to
show that the subject bungee cord which he purchased in Wisconsin, which
caused him severe injuries during his ordinary use of the product, was (1)
defective; (2) that the defects in this product  proximately caused the plaintiff's
injuries, including his eye  injuries which resulted in blindness in his right eye;
and (3) that said defects in this Keeper bungee cord existed at the time the
product left this defendants' control.

35.   The plaintiff will establish such defective condition[s] in one or more of these ways: [1] by proving a manufacturing defect; and/or [2] by proving a design defect.

## COUNT VII. JEREMY BEAULIEU V.
## HAMPTON PRODUCTS INTERNATIONAL CORP: NEGLIGENCE

36.   All of the facts and allegations set forth above in Paragraphs 1-15 as well are hereby restated and incorporated herein again the defendant named in this Count.

37.   And the plaintiff states that this defendant was negligent and failed to use reasonable care, in:

   A.   Failing to take reasonable steps to Inform him by labeling or otherwise of the fact that it had already designed and was selling different model/style bungee hooks which gated hooks would not open up as the "J" shaped hooks sold to the plaintiff did, causing the "snap-back," recoiling at high speed eye injury the defendant's model bungee did cause the plaintiff to suffer, resulting in blindness in his right eye;

   B.   Failing to make prominently known the information set forth in Paragraph A above both in all stores to which the defendant sold and distributed the product which injured the plaintiff and failing to direct all such stores and provide all such stores with product displays, and failing to prominently state in its catalogues and on-line advertisements of the bungee cord which injured the plaintiff, that a newer safer model existed which was designed to prevent eye injuries;

   C.   Failing to timely stop selling the make and model bungee cord with the hook that injured the plaintiff, and failure to replace all such hooks with the much safer hooks already available to this manufacturer and distributor; and

   D.   Failing to timely recall the product which injured the plaintiff; and failing to institute and timely recall or product recovery program, to prevent the plaintiff and others from being needlessly injured, by buying instead this company's safer bungee cords with the safer non-J-shaped hooks.

38.   Accordingly,

   -   Negligent failure to warn of the above;

   -   Negligent failure to warn that this manufacturer had found a cure to the danger and problem in the bungee cord industry AND was in fact already manufacturing and selling cords with hooks that were designed to prevent such hook-dislodging/snap-back eye injuries; and

10

-   Negligent failure to timely **recall** the old-style unreasonably dangerous bungee cords with J-shaped hooks which were well known to bend open and snap back and cause serious eye injuries;

-   Negligent failure to timely institute a product-recovery campaign to reach out to and educate the public and all bungee cord consumers and institute a product recovery campaign to **recover** the old-style unreasonably dangerous bungee cords with J-shaped hooks which were well known to bend open, snap back, and cause serious eye injuries; and replace them, or offer to replace them with the safer model designed to prevent dislodging of J-shaped hooks that could open up and snap back into eyes at high velocity.

-   Negligent failure to promulgate and post product literature and displays of the safe bungee cords at all places where its old style dangerous hooks might still be being sold.

## COUNT VIII: JEREMY BEAULIEU V. HAMPTON PRODUCTS INTERNATIONAL CORP: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

39.  The plaintiff hereby restates and incorporates by reference herein as against the above defendant named in the heading in this Count, all of the facts and allegations set forth hereinabove in Paragraphs 1 through 15.

40.  The defendant corporation is liable to compensate the plaintiff for all of the past, present, and future damages suffered as set forth hereinabove as a result of this defendant's breach of implied warranty of fitness for a particular purpose. The applicable law imposes upon the defendant corporation an obligation to have impliedly warranted, with respect to its bungee cords and its hooks, that they be fit and reasonably safe for the particular purpose that they were sold to accomplish; i.e., including the intended and foreseeable use to tie down and secure objects.

41.  Here, the defendant breached the implied warranty of fitness for a particular purpose because the subject cord's hook bent during the plaintiff's ordinary use of it, being unfit for one of the particular purposes it was manufactured and sold for, and unfit for, and the particular purpose the defendant knew and reasonably did and should have expected the subject product to be used for: i.e. use to safely secure items, e.g. in the back of vehicles, just as the plaintiff used the subject bungee cord for when its hook unforeseeably bent open to a degree, thereby impairing its original "J- shape" at one end, and thereby then causing the snap-back eye injury to the plaintiff who was in the process of the attaching the other hook at the other end of the bungee cord he was still holding in his hand. That this occurred shows that this bungee cord was not fit for this particular purpose for which it was manufactured and sold and bought by the plaintiff, thereby causing the plaintiff to suffer the aforesaid blinding eye injuries and damages as the direct and proximate result of the defendant's breach of this particular warranty of fitness for its particular purpose which is imposed by law upon the defendant manufacturer and seller.

42.   The plaintiff alleges that this defendant both knew, and should have known, (1) of the particular purposes for which this bungee cord would foreseeably be used, and therefore, the safety considerations required (here, to safely be able to be stretched and applied by its user to secure items in the back of vehicles); and (2) that the buyer was relying on the skill or judgment of this defendant to select or furnish safe suitable goods to effectuate these purposes. There is [imposed by the law]…an implied warranty that this bungee cords, and all such goods, shall be fit for such purposes; And that this defendant, as a manufacturer, or distributor, or seller, had an obligation to select or furnish to consumers and to purchasers of defendant's product, suitable goods; i.e., there is imposed by the law an implied warranty that the goods; i.e., this bungee cord and these hooks it distributed and sold to this consumer and purchaser, Jeremy Beaulieu, shall, by law, be fit for such purposes.

## COUNT IX. JEREMY BEAULIEU V. HAMPTON PRODUCTS: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

43.   The plaintiff hereby restates and incorporates by reference herein as against the above defendant named in the heading of this Count, all of the facts and allegations set forth hereinabove in Paragraphs 1 through 15.

44.   The defendant corporation is liable to compensate the plaintiff for all of the harm, pain, suffering and damages, past and future as a result of its breach of the implied warranty of merchantability. The applicable law imposed upon the defendant an obligation to have impliedly warranted, with respect to its strap, that it was merchantable, fit for its ordinary uses, and reasonably safe. The defendant breached this implied warranty of merchantability because said product proved to be unsafe, not of merchantable quality, and unfit for its intended ordinary uses and purposes. The Plaintiff was caused to suffer the aforesaid injuries and damages as the direct and proximate result of defendant's breach of the implied warranty of merchantability imposed by the law.

## COUNT X. REBECCA BEAULIEU V. HAMPTON PRODUCTS: LOSS OF CONSORTIUM

45.   At all material times, Rebecca Beaulieu was married to Jeremy Beaulieu and has suffered along with her husband and his pain, suffering, humiliation, changes in his personality, impairment of his ability to enjoy life as he had before, impairment of his ability to play with their two young boys as he had before, changes in his mood and temperament caused by his fear of blindness, and surgeries, and no longer being the same person he was before being so injured, and in many, many other ways, Rebecca has suffered, and will suffer, from the loss of consortium, including loss of intimacy and marital relations as well, of her husband, Jeremy, resulting from the eye injury, blindness, change in his appearance and personality, as a result of this injury caused by the defendants and their unreasonably dangerous and defective product and their failure to offer to him their safe bungee cord which would have prevented this terrible injury and losses to their relationship brought for which the defendant corporations are responsible.

**WHEREFORE**, the plaintiffs respectfully pray for a verdict and judgment in their favor as full and fair compensation for all of the harm, losses, and damages each of them has and will suffer, per the evidence to be adduced at the trial of this matter before a jury of our peers.

We hereby declare and state under the penalty of perjury that we believe that all of the facts and allegations set forth hereinabove are true and correct.

Respectfully submitted,

JEREMY BEAULIEU
50 Promenade Street
Hudson, WI 54016
Phone: 715-220-2617
Email: jbeaulieu7@gmail.com

REBECCA BEAULIEU
50 Promenade Street
Hudson, Wisconsin 54016
Phone: 715-220-2617
Email: beaulieur@uwstout.edu

Dated: August 12th, 2021